# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **ROSLYNN BLUE** | : | |
| 2604 Saint Albans Ave | : | |
| Cincinnati, Ohio 45237 | : | |
| | : | |
| Plaintiff, | : | CASE NO. 1:22-cv-45 |
| | : | |
| v. | : | JUDGE |
| | : | |
| | : | MAGISTRATE JUDGE |
| | : | |
| **BNSF RAILWAY COMPANY** | : | |
| 2500 Lou Menk Dr | : | |
| Ft. Worth, Texas 76161 | : | |
| | : | **Jury Demand Endorsed Herein** |
| | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, to correct unlawful employment practices on the basis of sex (female) and to provide appropriate relief to Plaintiff Roslynn Blue and a potential class of aggrieved female employees and job applicants. As alleged with greater particularity in Paragraphs 11 through 35, below, Plaintiff alleges that Defendant BNSF Railway Company has subjected Plaintiff and a class of aggrieved female employees and job applicants to sex discriminatory physical abilities testing that resulted in those employees and job applicants being denied employment opportunities because of their sex, female, in violation of Title VII.

## THE PARTIES

1. Plaintiff is a natural person residing in Hamilton County, Ohio.

2. Defendant BNSF Railway Company is a foreign corporation doing business in the Southern District of Ohio.

3. Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

4. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## JURISDICTION AND VENUE

5. This action arises under Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

6. This Court has jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343.

7. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

8. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff underwent pre-employment testing there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

9. The employment practices alleged to be unlawful were and are being committed in the Southern District of Ohio and other jurisdictions.

10. Plaintiff has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of his Right to Sue letter from the Equal Employment Opportunity Commission, a copy of which is attached hereto as "Exhibit A."

## FACTUAL BACKGROUND

11. Plaintiff alleges that Defendant discriminated against her on the basis of her sex/gender, female.

12. Plaintiff brings this action on behalf of herself and intends to pursue this matter on behalf of all other female job applicants and female employees that have been subjected to sex/gender discrimination because of physical abilities testing used by Defendant during the job application process and throughout employment.

13. The physical testing used by Defendant has a disparate impact on female job applicants and female employees applying for other jobs internally within Defendant.

14. A class of female job applicants have been denied employment opportunities because of their sex/gender because of physical capabilities testing used by Defendant, in violation of Title VII. Current and former female employees of Defendant have been subject to discrimination based on sex/gender because of physical capabilities testing used by Defendant.

15. Plaintiff applied for a job with Defendant on or about June 30, 2021. Specifically, Plaintiff applied to be an Intermodal Equipment Operator in Defendant's Memphis, Tennessee Intermodal Hub Facility.

16.     Plaintiff's interview was scheduled for July 28, 2021, via video. Plaintiff completed the interview. That evening, Plaintiff was conditionally offered the Intermodal Equipment Operator job via email, and she accepted the offer.

17.     On July 29, 2021, Plaintiff received an email from Defendant's Staffing Team, thanking her for accepting the conditional job offer. The email informed her that the offer was contingent upon her successful completion of "a further pre-employment review process."

18.     Part of that pre-employment review process included physical capabilities testing. The email informed Plaintiff that, "Many jobs will require a physical capabilities test. Industrial Physical Capability Services (IPCS) provides testing that measures your upper and lower extremity physical capabilities." Plaintiff was instructed to contact IPCS to schedule the physical capabilities test.

19.     On July 29, 2021, Defendant also emailed Plaintiff to let her know that it notified Comprehensive Health Services, Inc. (CHS) to initiate her Post Offer of Employment medical examination. The email asked her to access the Examinee Access Portal to register to complete the request, which she did.

20.     Plaintiff scheduled her physical capabilities test with IPCS for August 5, 2021. The exam took place at Oxford Physical Therapy in West Chester, OH, a facility used by Defendant, in conjunction with IPCS, to conduct the pre-employment physical capabilities testing.

21.     A description of the physical capabilities testing to be conducted was provided to Plaintiff prior to her appointment, via email, and reads as follows:

> *Your knee and shoulder muscles will be tested on state-of-the-art isokinetic equipment, identical to the type used for performance assessment of pro-athletes!*

> *The force producing capabilities of your muscles will be measured, not absolute strength. As you initiate movement on the speed controlled lever arm, the equipment resists your effort; therefore, this assessment is not like lifting weights. While performing the exercise movements, you will be stabilized and under the direct supervision of a trained clinician. Each assessment exercise lasts only 15-20 seconds per set.*
>
> *You will be required to give maximum effort during each set for accurate measurement of your true physical capability. For ultimate safety the equipment will accommodate to your fatigue by immediately reducing the resistance as your effort declines thus limiting the possibility of overexertion. As with any exercise normal muscle soreness may occur within 48 hours. If you experience prolonged soreness and/or pain, contact your physician. Further instruction will be given the day of your assessment.*

Additionally, the email provided the following:

> *One aspect of the new hire selection process is to successfully complete and achieve a passing score on a physical capability evaluation. The physical capability evaluation is commonly referred to as the IPCS PCE™ evaluation. The evaluation is performed on an isokinetic machine. You are not asked to lift or carry any weight. The resistance comes directly from the machine based on how hard you push and pull against the machine. The machine will match its resistance to your strength level. The evaluation focuses on the major muscle groups of the shoulders and legs since strength in these two areas is very important when performing the essential functions of the job. The evaluation will take about 20 to 40 minutes.*
>
> *You may be asked to warm up on an exercise bike or upper body ergometer for 3-5 minutes. You may also only be asked to warm up on the isokinetic equipment. All warm-up activities are done sub-maximally and serve to get the muscles warmed up to perform at their best. For both the knees & shoulders, you will be asked to complete two sets of 5 test repetitions. Prior to the test repetitions, you will perform several trial or practice repetitions to become familiar with the equipment. For the knee test, you will kick out and pull your leg back as fast and as hard as you can. For the shoulder test, you will start with your hand at your side; take your arm above your head and then back down to the starting point.*
>
> *It is important to understand that each component of the evaluation involves a push/pull movement. During these movements it is critical to push and pull as hard as possible. Your goal is to try to destroy the $40,000 isokinetic machine!*

22. Plaintiff performed the physical capabilities testing on August 5, 2021, as scheduled. She performed the physical capabilities test on the BioDex machine, also

known as the IPCS Biodex. However, Plaintiff was told there was an "error reading the exam" by someone at Oxford Physical Therapy and Plaintiff was told to return on August 10, 2021, to re-do the physical capabilities testing. She did so.

23. On August 11, 2021, Plaintiff received an email from Defendant letting her know that she failed the physical capabilities test. No other detail or information was provided to her.

24. She received a second email on August 11, 2021 from Defendant's Medical Department that informed her that her score did not meet the minimum score required for her job classification. Because of that she was not qualified for the position, and she was no longer in processing for the conditional job offer extended to her.

25. Upon information and belief, Defendant has implemented a selection procedure that requiring that candidates (both job applicants and current employees applying for other jobs, promotions, etc) seeking to be hired/selected for a wide variety of job titles must achieve a passing score on an isokinetic strength test known as the "IPCS" or the "IPCS Biodex," as described in the emails to Plaintiff from Defendant. The email specifically says "many jobs" will require physical strength testing as part of the pre-employment screening process.

26. Defendant's isokinetic strength test purports to measure certain aspects of job applicants' upper and lower body strength, as the emails from Defendant and IPCS also state.

27. Job applicants and candidates who fail to achieve a passing score on Defendant's isokinetic strength test, including Plaintiff, were and are disqualified from

positions they have sought and in Plaintiff's case, positions they have already been awarded.

28. Plaintiff was disqualified from the Intermodal Equipment Operator position she applied for after failing to achieve a passing score on Defendant's isokinetic strength test, as measured by the BioDex machine.

29. Upon information and belief, Defendant uses pre-selected passing scores for isokinetic strength testing.

30. Upon information and belief, Defendant's isokinetic strength testing causes significant disparate impact on female applicants and employees because of their gender/sex.

31. As a result of these practices, Defendant failed to hire Plaintiff because of her gender. Upon information and belief, because of these practices, Defendant has failed to hire a class of other aggrieved female employees because of their gender. These practices affect female job applicants and current/former employee candidates applying for a large variety of other positions within Defendant. The email from Defendant indicating that the pre-employment physical testing applies to "many jobs" confirms this.

32. These practices apply to a class of female job applicants and employees and are not limited to the job for which Plaintiff applied and was rejected or the location for which she applied.

33. Upon information and belief, Defendant conducts isokinetic strength testing nationally, effecting a large class of female applicants and employees.

34. Upon information and belief, the isokinetic strength testing conducted by Defendant is not consistent with business necessity for any job at Defendant.

35. The practices mentioned herein result in company-wide sex discrimination across a large number of jobs, resulting in gender/sex discrimination for female applicants and employees and a disparate impact on female employees and job applicants.

### COUNT I - TITLE VII
### Gender Discrimination

36. Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

37. Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by discriminating against Plaintiff and the class of other aggrieved employees and applicants because of their sex.

38. Plaintiff and the class of other aggrieved employees and applicants are female and are therefore members of a protected class.

39. Defendant's isokinetic strength testing causes significant disparate impact on female employees and job applicants because of sex.

40. Because of the employment practices complained of in paragraphs 11 through 35, Defendant has refused to hire/select Plaintiff and a class of other aggrieved female employees and job applicants for job titles affected by those testing practices because of their sex, female.

41. The effect of the employment practices complained of in paragraphs 11 through 35, has been to deprive Plaintiff and the class of other aggrieved female employees and job applicants of equal opportunities and otherwise adversely affect their status as employees and applicants because of their sex, female.

## COUNT II - Ohio Civil Rights Act
### Gender Discrimination

42. Plaintiff reasserts and reincorporates each and every allegation in the preceding paragraphs as if fully rewritten herein.

43. Defendant engaged in conduct that violates R.C. § 4112 prohibiting sex discrimination by discriminating against Plaintiff and the class of other aggrieved employees and applicants because of their sex.

44. Plaintiff and the class of other aggrieved employees and applicants are female and are therefore members of a protected class.

45. Defendant's isokinetic strength testing causes significant disparate impact on female employees and job applicants because of sex.

46. Because of the employment practices complained of in paragraphs 11 through 35, Defendant has refused to hire/select Plaintiff and a class of other aggrieved female employees and job applicants for job titles affected by those testing practices because of their sex, female.

47. The effect of the employment practices complained of in paragraphs 11 through 35, has been to deprive Plaintiff and the class of other aggrieved female employees and job applicants of equal opportunities and otherwise adversely affect their status as employees and applicants because of their sex, female.

WHEREFORE, Plaintiff demands:

A. For all Counts, monetary damages including back pay, with prejudgment interest, and benefits, front pay and reinstatement to positions that Plaintiff and other female class members were previously denied as a result of Defendant's employment practices, statutory liquidated damages, expert witness fees and attorneys' fees and costs,

and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate. Plaintiff demands this on behalf of herself and any other females that may make up the class of aggrieved female employees and job applicants.

B. Grant a permanent injunction prohibiting Defendant, its officers, agents, servants and employees, and all persons in active concert or participation with them, from implementing any other particular employment practices, such as employment tests, that cause disparate impact on female employees or job applicants because of sex and that are not job-related for the position(s) in question and consistent with business necessity or for which there are alternative employment practices that cause less impact, as well as any other employment practices that discriminate because of sex.

C. Order Defendant to institute and carry out training, policies, practices and programs that provide equal employment opportunities based on sex and ensure that its operations are free from employment practices, such as employment tests, that cause an unlawful disparate impact on female employees or job applicants.

Respectfully submitted,

/s/ *Rachel Sabo Friedmann*
Rachel Sabo Friedmann (0089226)
*Rachel@tfflegal.com*
Peter G. Friedmann (0089293)
*Pete@tfflegal.com*
**The Friedmann Firm LLC**
**(614) 610-9757**
1457 South High Street
Columbus, Ohio 43207

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

                                              /s/ *Rachel Sabo Friedmann*
                                              Rachel Sabo Friedmann (0089226)