IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ROSLYNN BLUE, | : |
| *Plaintiff*, | : Case No. 1:22-cv-45 |
| vs. | : Judge Jeffery P. Hopkins |
| BNSF RAILWAY COMPANY, | : |
| *Defendant*. | : |

**OPINION AND ORDER**

This matter is before the Court on Defendant BNSF Railway Company's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or Alternatively, to Transfer Venue ("Motion to Dismiss or Transfer") (Doc. 5). Plaintiff Roslynn Blue filed a Complaint against BNSF asserting claims for disparate impact gender discrimination based on the company's physical capabilities testing requirement in the hiring process. Doc. 1. BNSF moves to dismiss or to transfer the case for lack of personal jurisdiction and improper venue. For the reasons stated below, the Court finds that venue is not proper in the Southern District of Ohio. Accordingly, the Court **GRANTS** the Motion to Dismiss or Transfer (Doc. 5) and **TRANSFERS** this case to the Northern District of Texas.

I.    **BACKGROUND**

A.    **Complaint Allegations**

Blue resides in Hamilton County, Ohio. Doc. 1, PageID 2. She alleges that BNSF is a foreign corporation that does business in the Southern District of Ohio. *Id.* She alleges generally that BNSF subjected her "and a class of aggrieved female employees and job

applicants to sex discriminatory physical abilities testing that resulted in those employees and job applicants being denied employment opportunities because of their sex." *Id.* at PageID 1.

On June 30, 2021, Blue applied for a position as an Intermodal Equipment Operator with BNSF at its Memphis, Tennessee Intermodal Hub Facility. *Id.* at PageID 3. She interviewed for the position via video on July 28, 2021. *Id.* at PageID 4. That night, she was conditionally offered the job by email, and she accepted. *Id.* On July 29, 2021, BNSF's staffing team emailed Blue that her offer depended on her successful completion of "a further pre-employment review process" that included physical capabilities testing. *Id.* The email stated that "Many jobs will require a physical capabilities test. Industrial Physical Capability Services (IPCS) provides testing that measures your upper and lower extremity physical capabilities." *Id.* She was instructed to contact IPCS to schedule the test. *Id.*

Blue scheduled her physical capabilities test with IPCS for August 5, 2021 at Oxford Physical Therapy in West Chester, Ohio. *Id.* She received an email from BNSF before the testing that explained the testing procedure:

> *One aspect of the new hire selection process is to successfully complete and achieve a passing score on a physical capability evaluation. The physical capability evaluation is commonly referred to as the IPCS PCE™ evaluation. The evaluation is performed on an isokinetic machine. You are not asked to lift or carry any weight. The resistance comes directly from the machine based on how hard you push and pull against the machine. The machine will match its resistance to your strength level. The evaluation focuses on the major muscle groups of the shoulders and legs since strength in these two areas is very important when performing the essential functions of the job. The evaluation will take about 20 to 40 minutes.*

*Id.* at PageID 4–5. Blue took the test as scheduled on an IPCS Biodex machine, but there was an error reading the exam by someone at Oxford Physical Therapy. *Id.* at PageID 5–6. She returned and redid the testing on August 10, 2021. *Id.* at PageID 6. On August 11, 2021, Blue received two emails from BNSF's medical department telling her that she failed the physical

capabilities testing, did not meet the minimum required score for the job classification, was not qualified for the position, and was "no longer in processing for the conditional job offer extended to her." *Id.* at PageID 6.

Blue alleges that job applicants and candidates who do not achieve a passing score on BNSF's isokinetic strength test are disqualified from positions they sought or have already been awarded. *Id.* at PageID 6–7. She alleges she was disqualified from the Intermodal Equipment Operator position. *Id.* at PageID 7. Blue alleges that BNSF uses "pre-selected passing scores for isokinetic screening," and that BNSF's isokinetic strength testing causes a disparate impact on female applicants and employees because of their gender. *Id.* She alleges that BNSF failed to hire her and a class of other aggrieved female employees because of their gender as a result of these testing practice. *Id.* She alleges that BNSF conducts that isokinetic testing nationally, resulting "in company-wide discrimination across a large number of jobs." *Id.* at PageID 7–8. Blue alleges that the isokinetic strength testing is not consistent with business necessity for any job at BNSF. *Id.* at PageID 7.

**B.     Additional Relevant Facts**

BNSF provides additional, non-contradictory facts relevant to issues of jurisdiction and venue via the sworn declarations of three corporate officers. Docs. 6-1, 6-2, 6-3. James Obermiller, a Director-Compliance at BNSF, states that BNSF is organized under the laws of Delaware and has its principal place of business and corporate headquarters in Fort Worth, Texas. Doc. 6-1, PageID 52–53. He states that various department headquarters and the senior management team for BNSF are located in Fort Worth. *Id.* at PageID 53. He also states that BNSF maintains and administers all employment-related records for job applicants in

Fort Worth. *Id.* at PageID 54. Finally, he states that BNSF has no rail tracking and no offices or operation centers in Ohio. *Id.*

Dr. Theodore Aquino, the Chief Medical Officer for BNSF, oversees support services for BNSF's Medical and Employee Health Department ("MEH Department"). Doc. 6-2, PageID 55. Dr. Aquino states that the MEH Department is based in Fort Worth and has no employees in Ohio. *Id.* He states that the MEH staff involved in the post-offer medical-evaluation process, including him, are in Fort Worth. *Id.* at PageID 56. Dr. Aquino asserts that all medical information collected by BNSF or its contractors regarding Blue is maintained in Fort Worth. *Id.*

Dr. Aquino explains that BNSF worked with vendors to administer its post-offer medical-evaluation process, including IPCS. *Id.* He states that IPCS used its own vendors to provide testing locations and attempted to provide testing facilities near the location of applicants regardless of the location of potential job. *Id.* at PageID 57. He states that IPCS and its vendors do not make employment decisions for BNSF, but they only administer tests and pass on information about whether the applicant passed to BNSF. *Id.* As for the test Blue was required to take and failed, Dr. Aquino explains:

> All candidates who have received a conditional job offer for the Intermodal Equipment Operator position must take and pass the PCE test. Otherwise, the conditional job offer is revoked.
>
> * * *
>
> The decision not to hire candidates who fail the PCE test is a BNSF decision that is made in Fort Worth, Texas. Likewise, the decision to require candidates for safety sensitive positions to take the PCE test, including the decision to make passing the PCE test a requirement for the Intermodal Equipment Operator job that Blue sought, was made by BNSF in Fort Worth, Texas, and that decision is implemented and administered in Fort Worth, Texas.

*Id.*

Finally, Alexsus Meriwether, a Senior Human Resources Generalist for BNSF in July and August 2021, states that BNSF's Staffing Team in Fort Worth communicates conditional offers of employment to job applicants. Doc. 6-3, PageID 58. He also states that BNSF maintains all employment-related records for Blue in Fort Worth. *Id.* at PageID 59. He provided copies of the BNSF emails to Blue first making the conditional offer of employment and then rescinding the conditional offer of employment because of the failed physical capabilities test. *Id.* at PageID 62–65.

In response to these declarations, Blue provided records showing that BNSF is registered with the Ohio Secretary of State to do business in Ohio. Doc. 9-1. She did not otherwise dispute the factual assertions in the declarations.

**C.    Procedural History**

Blue filed her Complaint against BNSF on January 25, 2022. Doc. 1. She asserts claims for disparate impact gender discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Ohio Civil Rights Act, Ohio Revised Code chapter 4112. *Id.* at PageID 2, 8–9. She asserts that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Doc. 1, PageID 2. She states that venue is proper under 28 U.S.C. § 1391 "because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio, Plaintiff underwent pre-employment testing there, and Defendant is doing and has done substantial business in the Southern District of Ohio." *Id.* She alleges that unlawful employment practices "were and are committed in the Southern District of Ohio and other jurisdictions." *Id.*

BNSF has filed the pending Motion to Dismiss or Transfer. Doc. 5. Blue has filed a Response in Opposition, to which BNSF has filed a Reply. Docs. 9, 10.

## II. STANDARD OF REVIEW

BNSF seeks to dismiss or alternatively to transfer this action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). The Court will examine venue first. When venue is challenged as improper, "a plaintiff's well-pled allegations pertaining to venue issue[s] are taken as true, unless contradicted by a defendant's affidavits." *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 672 F. Supp. 3d 538, 542 (S.D. Ohio 2023) (citation omitted). The district court can examine facts outside the complaint, but it must draw all reasonable inferences and resolve factual disputes in favor of the plaintiff. *Id.*

Though venue usually is governed by 28 U.S.C. § 1391, Title VII contains its own more specific venue provision:

> Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e-5(f)(3).[1] "Title VII's specific venue provisions limit venue to judicial districts that have a connection with the alleged discrimination . . . ." *Ramos de Almeida v. Powell*, No. 01 CV 11630, 2002 WL 31834457, at *2 (S.D.N.Y. Dec. 16, 2002). "Venue is proper under the fourth, residual prong of the statute only if the defendant is not found within

---

[1] Although Blue cited to 28 U.S.C. § 1391 in her Complaint, she acknowledged in her Response in Opposition to the Motion to Dismiss or Transfer that 42 U.S.C. § 2000e-5(f)(3) applies. Doc. 9, PageID 101.

any of the first three districts." *Braun v. U.S. Dep't of the Interior*, 288 F. Supp. 3d 293, 299 (D.D.C. 2018) (cleaned up), *aff'd sub nom. In re Braun*, No. 18-5120, 2018 WL 11300459 (D.C. Cir. Dec. 28, 2018).

When an action is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it would have been brought." 28 U.S.C. § 1406(a). "[S]ection 1406(a) does not require that the district court have personal jurisdiction over the defendants before transferring the case." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993); *see also Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483 (6th Cir. 2009) (same holding). It follows that a district court need not determine whether personal jurisdiction exists before it transfers a case under § 1406(a).

### III. LAW AND ANALYSIS

BNSF contends that the Southern District of Ohio is an improper venue under the standards set forth in 42 U.S.C. § 2000e-5(f)(3). Blue does not dispute that venue is improper in this District under the second and third prongs of Title VII venue statute, but argues that venue lies in the Southern District of Ohio under the first prong. Doc. 9, PageID 101 ("The first [prong] is appliable to Plaintiff's claims. Defendant's employment records are likely kept in Texas, and Plaintiff would have worked in Tennessee had there been no Title VII violation. Moreover, Defendant's principal office is in Delaware.")

Under the first prong, venue is proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3). "In determining where the unlawful practice is alleged to have happened, a court must look to the place where the decisions and actions concerning the employment practices occurred." *Cox v. Nat'l Football League*, No. 97 C 3741, 1997 WL 619839, at *2 (N.D. Ill. Sept. 29, 1997)

(internal quotation and citation omitted); *see also Kendrick v. Potter*, No. CIV.A.06 122 GK, 2007 WL 2071670, at *2 (D.D.C. July 16, 2007) ("Venue under the first basis lies where a 'substantial part' of the decisions or actions related to the practice occurred." (citation omitted)); *Tipnis v. Emery Tel.*, No. CIVA06CV02402WYDCBS, 2007 WL 1306495, at *2 (D. Colo. May 3, 2007) (same holding). Blue asserts that the Southern District of Ohio is where the alleged unlawful employment practice took place because it is where she applied for the BNSF position, where she underwent physical capabilities testing, and where she was told she would not get the position because she failed the testing. Doc. 1, PageID 4–7. BNSF conversely argues that the Northern District of Texas is the proper venue under the first prong of § 2000e-5(f)(3) because Fort Worth is where BNSF made the relevant employment decisions. Doc. 6-2, PageID 57.

To begin, that Blue applied for the position and was informed that she would not receive the position in the Southern District of Ohio is not relevant to the first prong of § 2000e-5(f)(3). *See Carrothers v. Noblestar Sys. Corp.*, No. Civ.A. G-05-610, 2006 WL 734347, at *2 (S.D. Tex. Mar. 21, 2006) (stating that where the plaintiff received communications about the discriminatory decisions is not relevant under § 2000e-5(f)(3)); *cf. Whipstock v. Raytheon Co.*, No. CIV. 07-11137, 2007 WL 2318745, at *3 (E.D. Mich. Aug. 10, 2007) ("The language of the statute does not provide for venue where the effects of the alleged unlawful employment practices are felt."). Likewise, the fact that the physical capabilities testing was performed in the Southern District of Ohio is not materially relevant here. The testing was performed not by BNSF but by a company selected by BNSF's vendor, IPCS, who itself is not a party to this action. Doc. 1, PageID 4–6. Blue does not allege in the Complaint that IPCS administered the testing in a discriminatory or unfair manner. Rather, it is BNSF's use

of pre-selected passing scores that allegedly result in a disparate impact against female applicants and employees. *Id.* at PageID 7.

Blue acknowledges in the Complaint that BNSF makes the decisions to require the physical capabilities testing, to use pre-selected passing scores, and to withdraw contingent offers to applicants who fail the testing. *Id.* at PageID 4–7. IPCS makes no employment decisions for BNSF. Doc. 6-2, PageID 57. The uncontradicted evidence from BNSF establishes that its decisionmakers make decisions about the pre-employment physical capabilities testing in Fort Worth. *Id.* at PageID 56–57. The Court concludes that the decisions and actions concerning the allegedly discriminatory employment practice occurred in the Northern District of Texas, not in the Southern District of Ohio. Venue is improper here under the first three prongs of 42 U.S.C. § 2000e-5(f)(3). Venue lies only in the Northern District of Texas—where the discriminatory practice occurred and where employment records are maintained—and the Western District of Tennessee—where Blue would have worked for BNSF had she been hired.

Title 42 § 1406(a) gives the Court discretion to dismiss or transfer an action when it has been filed in an improper venue. BNSF requests that the Court dismiss the case or transfer it to the Northern District of Texas. Blue argues in response that the case should not be dismissed or transferred because jurisdiction and venue are proper in the Southern District of Ohio, but she does not address how the case should proceed if the Court determines that jurisdiction or venue are improper. The Court finds that it is in the interests of justice to transfer the case to the Northern District of Texas rather than dismiss it.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion to Dismiss or Transfer (Doc. 5) insofar as the Court orders that this case be **TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS**.

**IT IS SO ORDERED.**

September 24, 2024

Jeffery P. Hopkins
United States District Judge